with both sides approach please good morning counsel good morning good morning we ordinarily allow 15 minutes per side we always allow a few minutes for rebuttal and as you know from us if you have up here before us before that if we're engaged in an interesting colleague we will keep going with you we won't shorten your time or cut you off okay we want to hear what you have to say okay thank you both thank you please proceed your honor my name is Carolyn Clarke West I'm here on behalf of the appellant Michael Nieto we raised several issues in our brief and we would like to just touch on two of them briefly I would like to discuss the Lynch issue which I believe is the second issue in the brief and then I would also like to discuss in more detail excessive sentencing and why we think that Michael's sentence is an abuse of discretion just a few points on Lynch it is our position that the trial court in this case abused its discretion when it barred Michael Nieto from presenting evidence that the decedent in this case Richard Soria had a prior conviction for aggravated UW this was a conviction for assessing a loaded handgun the conviction was important to Michael's case because he had raised self-defense and it supported his theory of self-defense that he was fired at first and that when he before he ended up firing at the other vehicle he saw a weapon come out of what when were they when was he fired at Mike at what point during the chase where they fired at Michael's initial statement is that they were fired at before it's a second incident we back up it's the the record shows that there seems to be an altercation between these vehicles they lose track of one another and then minutes later Michael's vehicle and encounters of the seedings vehicle and according to Michael's statement he saw a weapon come out of a window and that's when if you look at a statement actually what happened people in Michael's vehicle including someone he refers to as a gang enforcer told him you better shoot those guys you're not gonna let him shoot us are you Michael said he was scared so the question I have though because it is a little confusing sure you know I'm just trying to get your read on it is it fair to read his statement and conclude that his claim earlier on which he took away later is that they were shot at when they weren't even in their vehicle what Michael's statement was is that initially these guys came by Michael said he said he was out I forget what he said he's doing it sounded me like he's at a car wash perhaps I don't know he something to that effect and he what he says is that these guys started making fun of him and teasing him because he happened to have on a shirt of one of his friends who had been killed during an earlier incident so then it sounds like and it's a statement sort of vague and in the trial testimony doesn't really say much about this but it sounds like then he gets in a vehicle he's not the driver he's in the front passenger seat in the back seat are two gang members one Timothy McNovak who testifies at trial the second gang member is the one that Michael refers to as the enforcer that man defense counsel subpoenaed at trial and he invoked his Fifth Amendment right as he's inclined to do so it sounds like there's a chase or Michael says that the other vehicle the red Cherokee if you will fires at them blazes them three times and then they lose track of each other Michael says he's kind of relieved because the people in that his vehicle said there's a gun in the airbag underneath the airbag it sounds like and there's people in the backseat telling you better shoot those guys when they see them the second time and Michael says I was afraid the gang enforcers in the back he's they're gonna if you will F me up is what he says it's in a statement and so what happens is he says he sees a firearm come out of the other vehicle and at that point again the people in the back seat are saying you're not gonna let those guys shoot us are you better shoot those guys and he shoots up he says he tries to shoot at the doors he's afraid he didn't want to do it unfortunately he hit mr. Soria and he also hit Israel Fernandez right we try to hit the doors and he hit one man in the head that's correct well isn't this whole issue though that the issue of the admissibility of the gun charge the gun drop whatever you want to call it isn't that done away with when he in his statement unequivocally after the police officer tells him ten times no no no no no no no no I just want you to tell the truth or you shot at that day and he says no isn't that doesn't that end this and seems like the trial court went out of her way the trial judge went out of her way to allow the evidence such as it was of self-defense to get to the jury the instruction to get to the jury despite the defendant's admission that's completely inconsistent with him being fired at well I guess I would disagree with that in one respect your honor and that is that Michael recants or takes back pursuant to the detective sort of leading him down the garden path you know all you said was tell the truth I don't know that's leading you down the garden path but nonetheless what he does say he does say he does recant about whether he's fired at first that morning but he never recants on the issue of whether or not someone put a gun out of the vehicle during the second encounter and I think what's important here is Timothy Novak testifies at trial he says that the the there's hand gestures coming out of that that vehicle he's in the backseat I don't know what he's seeing you know it's kind of unclear from the record exactly how this is going down but Michael does not recant on his statement that he sees a chrome object come out of the window and then the people in his vehicle then you know in Eggemont to shoot these guys so I think if you're saying this all would have come out differently had there been evidence of the fact that that there'd been a charge of possession a UUW I believe that's all would have been even though he fired he all the evidence about I hit one of them in the dome and you know is it and all the all the other things that came in saying this would have altered the outcome this is what might be with a self-defense instruction is my colleague said other than Michael statement there's no other evidence that supports his theory of self-defense and what the Lynch court looked at and what they were considering when you look at their decision what they're talking about is does the jury have all the facts relevant facts reliable facts a prior conviction is reliable it's a in this case where Michael is saying I see a firearm coming out that window identified as to who might have been holding the firearm we don't know who it was right there's four guys in the car we don't know which one of them might might have helped might have done that it goes to his mindset of why he's firing at these guys and the other thing I think evidence of a charge as to one person for a gun drop when you don't know which of the four might have been holding the gun isn't it causing the jury to speculate well I think what it does it requires an inferential leap you I think what it is it gives a jury another piece of evidence to consider you're sitting there as a trial judge and you're saying I don't the last thing what it was confuse these people I want to make sure they have relevant evidence as you say so I'm not gonna let them have have that evidence in my discretion and is a discretionary call I'm not gonna let them have that evidence of one person had a UUW charge and we don't know which of the four and this guy's a stranger statements many times I mean that sounds like you're calling for confusion when you when you if you had allowed that evidence in I guess only in the sense that this is a gun case we know mr. story had a murder case it's a yeah it's a murder case by firearm yeah and what Michaels defense was is I saw a weapon come out of that vehicle and we know for a fact that this the seeding in this case just weeks before this offense was it was or I'm sorry before this was was position or I'm sorry I was convicted of possessing a loaded firearm and I think what's important here my last point on this if you will is that I got to show manifest prejudice that's required it's not just a boost of use of discretion he has to show he was prejudiced and I think he's able to do that in this case for the precise reason that in closing argument the state was able to capitalize on the trial court's say the students weapon of choice is a glass bottle that's it so that's what the jury goes into the jury room and that's all they know about an objection though I mean the trial judge you know if if well if one thinks that that was not proper argument which is not much of a stretch you know how about an objection if it's if it's so bad you know that the trial court could have taken care of that if an objection was made there wasn't an objection made I mean I think that defense counsel is doing the best job he could under the facts of the case but you know we've argued this on their lynch we didn't argue it as an effective assistance of counsel and to summarize it's based our point is that when a jury goes in to deliberate and knows knows that Michael statement as he claims he sees a weapon come out of that vehicle the jury has no idea that this individual was known to carry a loaded weapon it would have helped the fact finder would they believe that then this is necessarily a self-defense case I don't know but they were entitled to any relevant and reliable evidence that could have been presented to support Michaels counsel did anybody else from the defendants car testified that they saw a gun coming out of it a red jeep and Michael's car well the driver was charged in this case he skipped town mm-hmm Timothy Novak says he saw a hand come out making gang signals like I said he's in the backseat I don't know you know how well he can see and then the fourth person in the vehicle is the gang enforcer who pleased the Fifth Amendment no no the answer is no yeah there's just nothing in the record that would corroborate anything that mr. Nieto seemed to say in the early part of his statement you know perhaps other than the you know provocation with a gang sign or something but in terms of the gun in there's in terms of any physical evidence there's nothing to corroborate it well there's one I mean one point I'd like to make about that is he claims he shot at earlier but it seems to be at a different location than where the actual offense when when he strikes the other cases like there's no evidence that the police went investigated that other location and really I mean without that evidence that would have supported his fence what's he left with he has a statement the gang enforcers not willing to testify on his behalf or testify at all and all he has is you know his statement which he did not recant that portion of his statement and mr. stories prior conviction that would have happened at least then the jury would have known this is someone who is who's known to carry a weapon well that doesn't mean they necessarily would have believed his self-defense but it it was relevant and it was reliable evidence the next issue I'd like to get to is excessive sentence in this case it's our position that that Michael was sentenced to a total of 78 years he was 17 at the time of this offense we may we maintain that this is an abuse of discretion because it's based on an absolute and irrevocable judgment that Michael is incorrigible and cannot be fit to reenter society it says he's redeemable and I think we have precedent from Oprah and Graham and I'd like to point out that and Fern which is cited in our case although I didn't put this in precisely burn says that reviewing courts and considering excessive sentence can look at other reviewing courts such as the US Supreme Court and considering whether a sentence is excessive and I think the import of Michael's case because it talks about juveniles it talks about how they're more vulnerable to peer pressure and I think this is clear from Michael's statement if we look at the facts of this case what happened was he's in the vehicle with these other gang members and I think what's significant if you really read through his statement what's going on here is he's saying he's scared he's saying I don't want to shoot these guys he's saying that the gang enforcers are sitting in the backseat saying you better shoot these guys and if he if you don't shoot him we're gonna F you up if you will that's what he says didn't sound that way when he was talking to I think it was Daniel I mean we're talking about a 17 year old kid he's excitable you can see that on the videotape he's I mean it's astounding to me watching because at the same time you're looking at this kid he's by this point he's just 18 and he's exhausted from this chaotic upbringing that he's been in you know he says in his statement and this is in the PSI too you know he joins this gang at age 11 why well his mom is a crack cocaine addict there's no structure where's his dad well he's incarcerated you can find him in the DOC right now when you pull up Michael's own picture they have the same name and I think what you see in Michael's statement and all of his ex actions is a textbook case of what the Supreme Court is talking about with juvenile offenders you know he this kid's never gotten a break in life he he says in a statement I'm alone at age 6 because my mom's gone and then with this culminates is in this incident what's going on here well he's in a vehicle he says I don't want to shoot he's afraid of this guy sitting in the backseat and he ends up shooting those guys he says I tried to shoot at the doors I didn't mean to shoot but I did I felt like I had to that's what he's saying I mean I think we would all agree that this is a sad case and a tragic case you know for everybody the victim the victim's family mm-hmm and this young man who you know did what he did and was punished if you were going to you know wave a magic wand on the sentencing issue what what do you think should be done I think that a sentence of 51 years which is the best Michael can do in this case it's the minimum that's the best he can do that's right it's the minimum if you if a minimum sentence which it is today of course given the firearm Adams it's 51 years that's a hundred percent time on the 45 it's 85 percent on the six-year sentence which is 5.1 years Michael's been in custody since he's 18 he would not get out of custody so he's 68 years old that's the that's his whole life that's a late adolescence that's middle age that's putting them into senior citizen territory and I think that based on the facts of this case and based what the US Supreme Court has said about juvenile offender such as Michael we have to consider the severity of the offense which I think a 51 sentence 51 year sentence does it's it's this whole life but you're not you're not arguing that the 78 was not within the range it was in the proper way what I am arguing is 51 is within the range and I think it's proportionate to this offense it is the minimum if I could make him believe a magic wand I'd get rid of disproportionate sentence to sentence him to 51 years for this offense it what it says is we don't think this kid or what the sentence as it stands right now says we think this kid cannot be it's not suited to ever reenter society we're making a judgment on him which the Supreme Court in Roper and in Roper they're talking about capital cases like Michael's case a homicide case wasn't charged and he would be eligible actually for that only yeah but the and whether they're irredeemable and whether we are going to make that judgment from the action that they commit as a youth we do that in natural life cases right I mean that's you know that's basically what he got was natural I mean Michael we got prison he's 92 it's not gonna happen he still has 70 years to go in his sentence as of today he's only 23 years old it's a waste of a lot of lives it is I think that it's not it it's within this court's authority under 615 before to sentence him within the spirit and purpose of the sentencing code which does the code of corrections under article 1 section 11 if we find that it's an abuse of discretion and our whole point on the abuse of discretion is that it has made a judgment about him based on this case and his actions in this case which are admittedly terrible it's a murder all murders are bad but we do not think this warrants a life sentence and we think under Roper and Graham he should be eligible excuse me to reenter society morning morning may it please the court I'm assistant state attorney Emma Milwaukee on behalf of the people of the state of Illinois the defendant shot Richard Soria in the back of the head he fired a at least eight bullets at the red Jeep this is not a case of self-defense at best looking at the evidence most favorable to defend it in his original confession you have the same disciples shooting at the Latin Kings at some point and the defendant pulling out a nation gun chasing after the same disciples in his car with his bullets into that car shooting Richard Soria in the back of the head and hitting Israel Fernandez in the armpit defendant did not raise properly raise a theory of self-defense and as a result there can be no error in the denial of Lynch evidence was the giving of the self-defense instruction just a freebie that the judge did or what the judge gave the defendant a huge benefit of the doubt and giving that the evidence of self-defense was extremely slight in this case defendant obviously was not prejudiced by that instruction he got the benefit of the doubt but the judge must have thought there was some evidence to support it to give the instruction or am I incorrect I think the judge just giving a break I think the judge gave the defendant a break yeah I think that's what happened and he got that break and now he's able to argue Lynch in this case which he shouldn't be because there was no it was not properly raised and even if it was the trial court completely used its discretion in denying that UUW conviction when she realized that that's a possessory crime that is not probative of violent aggressive behavior no Illinois appellate court has ever reversed a trial courts ruling denying a UUW conviction under Lynch and that's because it is not probative of violent aggressive behavior and that's all Lynch allows what about the weapon of choice being battles when the assistant state's attorney knew full well that he or she had succeeded in keeping out the gun charge it's proper because the the UUW conviction is not a conviction where the victim excuse me used the weapon they use the gun as a it is that you know the the victim can carry a gun and defendant argues that just because the victim might have a propensity to carry a gun and that shows aggressive behavior it doesn't it shows a propensity to carry a gun perhaps but that does not show a propensity to use that gun ever there were the victim's weapon of choice was using a glass bottle throwing it at traffic that's that's the only conviction he had it's only the jury heard and that's the only thing the jury heard that is what was properly admitted evidence and even if the prosecutor was was better to leave that unsaid the evidence here was so overwhelming against defendant any error in this case was entirely harmless we had defendants own gang member saying that there was never a gun shown by the same disciples they never fired at the Lankings they never showed a gun at most they might have shown some gang signals and yelled out some slangs and we have the physical evidence we have the eight bullets recovered all from the same firearm we have Israel Fernandez one of the victims saying that we never showed a gun the police went to the red jeep there was no gun found in the red jeep the victim was still in the car he was not holding a gun we know this the victims never fired at the defendant as a result the court properly ruled on the evidence moving on to whether the sentence was excuse me counsel do you I didn't see any place in the record where they tested the victim's hands for gunshot residue are you aware of any no they did not do that it in terms of the sentence this sentence was well within the trial court's decision it was not an abuse of discretion the court listened to evidence presented the court considered the PSI the court said on the record I'm considering the PSI I'm considering the record the arguments made by counsel and the court asked for continuance to make her ruling because she wanted to consider carefully this case this was a serious case the defendant killed Richard Soria he seriously injured Israel Fernandez and then three months later he's playing with a gun and he kills his own brother maybe accidentally but the defendant is responsible for two deaths in his life do you think that the trial judge may have taken into account in saying that he didn't seem like he was capable of rehabilitation her mistake of fact about comments that were made by I think it's again Daniel Godinez about that the brother should say that the other gang shot him Daniel Godinez give us give us the factual background if you could from your benefit of your knowledge of the file here's here's how the timeline happened defendant shoots and kills Richard Soria three months later the police still don't know what's who's responsible for this murder he's sitting on Christmas Eve with his brother-in-law with his own brother the younger brother Elias Nieto the victim in that case defendant's sister pregnant sister is home his friend Ivan is there they're cutting weed on the table defendants playing with some gun he has he didn't think it worked he's slamming on the table as he demonstrates in the video and it goes off killing his brother at that point they drive Elias Nieto to the hospital with Daniel Godinez and Elias is saying in the hospital to Daniel and defendant say the SDs shot me the Satan disciples so yes Elias said that to both them and and both Daniel and defendant presumably go along with this lie and the police are looking for the defendant for a month and they keep telling the police it's the SDs it's the SDs at some point it's not clear when Daniel Godinez rats out defendant tells him the police actually what happened the police come to the house arrest defendant at that point it's too late he goes with the police and he's confronted with what's happened and he tells the truth and he says yes Elias Nieto told us to say the DS SD shot me so I think what's important to the trial court in making that statement about s the SDs and Elias Nieto and this whole mess is that the defendant never takes responsibility for his crimes in fact he's willing to let somebody else take the fall and go to precisely and continue police activity otherwise waste the police says limited resources looking for the same disciples who responsible for this young boy's death when it was defendant it's clear in the video he doesn't even tell his mother what had happened defendant is never willing to take responsibility I don't think the video shows that he is susceptible to influence I think it shows he's a liar and he's manipulative the trial court looked at the video it is not in this courts it's not this court's role to reweigh those factors the trial court made a proper ruling she made a lengthy ruling she said I'm taking defendants age of 17 into consideration and she felt that 78 years was proper and it was well within the statutory range and in addition Graham and Roper are not applicable to this case in any way those both apply Roper obviously doesn't apply it's a death penalty case Graham does not apply because it applies only to non homicide offenders sentenced to life without parole we have neither in this case that court very specifically limited their decision and they said it's almost clear that they said this would not be unconstitutional for a homicide offender justice Roberts and his concurrence says that as a result defendant has decided any case law that indicates that this is an excessive sentence this is beyond the court's discretion and for those reasons and those stated in our brief we respectfully ask this court to affirm defendants conviction and sentence rebuttal please on the lynch issue about whether or not self-defense was my second point is that that I don't believe is a proper reading of lynch the court's analysis in lynching said when self-defense is race that's their language and what happened here this is conflicting right exactly and I think and I went back and I look to see where it because it's figaro which is state sites where does this come from when there's an out an initial analysis about whether it's properly raised in the first place that comes from a case called people vs. Isabel it's from a second district case 1988 it's 177 ill app 3854 and what happened in that case the defendant was asking his issue on appeal is he should have been allowed a self-defense instruction and his secondary argument to that was that in addition to that he should have been able to introduce lynch evidence so just our position on that is a there was slight evidence he was entitled to the instruction and be we feel that under if you read lynch plain reading lynch says when self-defense is raised self-defense was raised in this case so then the analysis goes right to whether or not the evidence was reliable with regard to sentencing we're not asking the court to relay the the evidence with regard to Michael sentence we're asking the court to find that this is an abuse of discretion because it does not fit with the purpose and spirit of the sentencing law under the code of corrections the Illinois Constitution and the eighth amendment no it's you know listening to the state it's they're very effective they always refer to him as the defendant which they're entitled to do but the eighth amendment requires the state and this is language from Graham the eighth amendment requires the state to respect the human attributes of those who commit serious crimes that's our clients he committed a serious crime and all we're asking is that his which is what justice Roberts calls it a juvenile status be taken in consideration the state also says that we there's no case that these cases don't apply Graham or Mopar I would say under Fern says that the reviewing court can look at other reviewing courts being the US Supreme Court and making excessive sentence decisions and evaluating those you know the state talks a lot about Michaels the shooting on his brother I mean it just goes to the fact that this kid has had no mornings it's a disaster here I mean the whole kid's life is a disaster this kid has had nothing nothing and what we're asking is that there not be a judgment made at this point of his life to say you were never fit to return to society and we ask that you would exercise your authority as you're entitled to do under 615 for before sentencing to 51 years is proportional to the severity of this offense you'll be an old man when he comes out but then that way it also comports with a sentencing code which requires for rehabilitation and that offenders like Michael don't have excessive incarceration thank you and I just like to say thank you for very well written briefs and very thoughtful and we obviously know that you care and you care about your your clients respecting clients and you care about doing what's right and we appreciate that very much so case will be taken under advisement and we are adjourned thank you